Myers et al. *v.* Walker, survivor, etc.

Henry Myers *et al.,* Plaintiffs in Error, *v.* Charles Walker, survivor, etc., Defendant in Error.

ERROR TO PEORIA.

The meaning of terms of art and science, technical phrases, and words of local meaning, when employed in an agreement, may be proved by extrinsic evidence.

The meaning of the word "season," in a contract for the purchase and delivery of corn, at a particular locality, allowed to be proved.

When local terms and phrases are used in an agreement, the presumption is, that the parties understood their meaning, and employed them according to their local significance.

Where the performance of certain acts is limited by a "season," anything occurring afterwards by increasing expenses, will have to be borne by the party benefited thereby.

Corn purchased to be delivered during a certain season, after the expiration of that season, is at the risk of him for whom it was purchased.

Money left with a party to make purchases, without a promise to that effect, will not bear interest, unless there is an unreasonable delay in refunding the money after demand.

This was an action of assumpsit, by Walker and Kellogg, against H. Myers & Co., for $20,000, to March term, 1858.

The declaration contained the common counts for goods, etc., delivered; goods, etc., sold; work and materials; money loaned; money paid; money received; account stated; interest; and corn, wheat and grain.

Plaintiff's account filed March 12, 1859, commencing 9th

March, 1853; debits of bal. acct., cash, lumber, sacks, labor, and interest, $14,846.63; credits of corn, sacks, and commissions, $8,160.76; balance, $6,685.87.

Plea: General issue and joinder; also, notice of set-off for work and materials, goods, wares and merchandise, money lent, money paid, money had and received, interest, and account stated.

Replication: calling notice second plea, and denying indebtedness.

Agreement referred to in opinion of the court:

*Peoria, Feb.* 13, 1854.

This certifies that we have agreed to pay H. Myers & Co. four cents per bushel of 56lbs. for purchasing and delivering corn on board our boats the coming season, they purchasing the same at as low a price as possible; and if, in our opinion, the price should be too high, we are to notify them, and they are to stop buying. It is understood we are to keep them supplied with money as needed for paying for same, and they are to deliver us the same quantity of corn their account shows as being bought for us and charged to our account. It is also understood that they are to purchase for us alone, and not for others; it is also understood the above refers to corn bought at their warehouse at Spring Lake, upon the Illinois river.

(Signed)                    WALKER & KELLOGG.

Instructions given for plaintiff, and excepted to by defendants:

1st.    That the plaintiff in this case is entitled to credit for all the money advanced under the contract, and to interest upon so much as has not been expended by defendants, under the contract, from the time the same ought, by the contract, to have been expended.

2nd.    That, by the contract, the corn was to be delivered when called for during the season, without any charges except the price to be paid per bushel, as stipulated in the contract, and four cents per bushel, commission.

3rd.    If the jury believe, from the evidence, that the defendants admitted the correctness of the plaintiff's account, given in evidence, and that the account which the defendants furnished of their claims, in 1858, is correct, they will find for the plaintiff the difference between the two accounts — deducting from the defendants' account all charges, except the commission of four cents on the bushel, as stipulated in the contract, so far as the charges for corn are concerned.

4th.    That, under the contract in this case, the plaintiff is not liable for any corn spoiled in the hands of the defendants, during the season specified in the contract.

5th.    If the jury believe, from the evidence, or from the appearance and conduct of the witness, Pratt, upon the stand, and from his manner of testifying, that he is unworthy of credit, they may disregard his whole testimony.

The jury found for the plaintiff the sum of five thousand five hundred and fifty-eight dollars, and twenty cents.

Motion for new trial, for the following reasons:

The court gave improper instructions to the jury.

The verdict is manifestly against the evidence.

The verdict is against the law of the case.

The damages given by the jury are excessive and impossible.

The court admitted improper evidence for the plaintiff.

The verdict is otherwise erroneous, oppressive, and absurd.

Plaintiff entered a remittitur of $886.34.

Assignment of errors, to wit:

The said Circuit Court admitted improper evidence for the defendant in error, against the objection of the plaintiffs in error, and to their manifest injury, in this, to wit, that such evidence influenced the jury to find against them.

The said Circuit Court gave improper and erroneous instructions for the defendant in error, against the objection of the plaintiffs in error, and to their manifest injury, in this, to wit, that such instructions misled the jury to find against them.

The verdict of the jury is unjust, illegal, and oppressive, in this, to wit: it is against the weight of the evidence; it is against the law of the land; the damages assessed are excessive and impossible; and said verdict ought to have been for the plaintiffs in error.

The said Circuit Court overruled the motion of the plaintiffs in error for a new trial, and gave judgment on said verdict for the defendant in error, whereas the said Circuit Court ought to have allowed said motion, and awarded a new trial.

The remittitur of the defendant in error is a confession of the injustice, illegality and oppressiveness of said verdict, and such injustice, illegality and oppressiveness are not cured by such remittitur; nevertheless, the said Circuit Court, after such remittitur, gave judgment against said plaintiffs in error.

CHARLES C. BONNEY, for Plaintiffs in Error.

N. PURPLE, for Defendant in Error.

WALKER, J. Meaning of terms of art, of science, technical phrases and words of local meaning, may, undoubtedly, when employed in an agreement, be proved by extrinsic evidence; and, by so doing, the rule is not violated which prohibits the introduction of evidence to alter, vary or explain an agreement, or that a written contract cannot exist partly in parol and partly in writing. By receiving such evidence, the court does no more than when it refers to a lexicon to ascertain the mean-

ing of a word. This has no tendency to vary the contract, but is the only means of ascertaining the intention of the parties when they entered into the agreement, and when this can be ascertained, it must govern. When local terms or phrases are employed where they are in use, the presumption is, that the parties understood their meaning, and employed them according to their local signification. And to give effect to the agreement, the court must know the sense in which they were employed. The word " season," as employed in this agreement, must have had reference to the period within which it was customary to purchase corn at that point, on the Illinois River, and the presumption is, that the meaning of the term was well known and understood, in the locality in which the contract was entered into, by the parties. The court below, therefore, committed no error in receiving evidence to show the local meaning of this term.

Under this agreement, the plaintiffs in error were to receive four cents a bushel, for buying, storing and delivering the corn on the boats of defendants in error. The contract limited the performance of these acts to the approaching season, and the plaintiffs in error were not bound either to purchase or store the corn after the expiration of that time. And if the defendants in error neglected to remove the grain within the time limited, the plaintiffs in error had the right to charge the usual and customary rates of storage for the time it subsequently remained in store, and the defendants in error were bound to pay it. The undertaking was not to store it for an indefinite period, but only during the season.

The evidence shows that about the first of May, and some time in the latter part of the same month, the plaintiffs in error gave notice to the other parties, that the corn was all ready for delivery, and that unless they removed it, the plaintiffs in error would not hold themselves liable for any injury it might sustain, or for any warehouse charges that might accrue, and defendants in error then agreed to receive it. They at the time urged no claim that plaintiffs in error were bound to keep it longer, at their risk or charge. The evidence tends to show that the first of June, on that part of the Illinois River, is the end of the season, for buying and shipping corn; and if such was not the case, it is not probable that the defendants in error would have made no objections to removing it at that time, or incurring the risk of loss and expense for storage. The plaintiffs in error having given the notice that the corn was ready for removal, could not be held liable for any loss it may have sustained after the " season " expired, unless they in some way produced or contributed to the loss, and when they paid the warehouse

charges which accrued during the time for which they were bound to store the grain, and preserved it from injury or loss during that time, they had discharged their part of the agreement.

If the defendant in error had removed the grain within the time which plaintiffs had agreed to store it, they would have been bound to place it on board the boats of defendant in error, free of charge. But as it was not removed within that time, if the delay caused a necessary increase of the expense of shipping the grain, plaintiffs in error would unquestionably have the right to recover the additional expense. The evidence tends to prove, that after the first of June and before the grain was removed, the river had fallen and receded from the warehouse, so as to unavoidably increase the expense of putting it on board of the boat, and for any necessary increased expense incurred in shipping it, they were entitled to recover.

It is urged that the court erred in instructing the jury that plaintiff below was entitled to recover interest on any sum of money, furnished defendants below, with which to purchase corn, after it should have been but was not thus appropriated. This instruction may bear the construction, that the court designed to inform the jury that there were funds in the hands of plaintiffs in error, which had not been applied by them in the purchase of corn, and if they so understood it, they in all probability were misled by it. They should have been left to find that fact from the evidence. It is also urged, that even if they had money in the hands of plaintiffs in error, unappropriated, that as the amount was in dispute and unascertained by the parties, and its payment had not been demanded, the defendant in error has no right to recover interest upon any such balance, unless there was an unreasonable delay in its payment, there not being any promise to pay interest. This court has repeatedly held, that the creditor is not entitled to interest on a balance of an account due him, but that there must have been a promise to pay interest, or an unreasonable delay in payment. *Simms* v. *Clark*, 13 Ill. R. 544; *Clement* v. *McConnell*, 14 Ill. R. 156; *Kennedy* v. *Gibbs*, 15 Ill. R. 406. In the absence of an agreement to pay interest, or a demand of payment of the money, when it appears that the balance, if any, was in dispute, between the parties, there would be no right to recover interest. The court, therefore, erred in giving this instruction. The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*